# STATE OF CONNECTICUT *v.* TARRANCE LAWRENCE
## (AC 24716)

Lavery, C. J., and Schaller, Dranginis, Flynn, Bishop, DiPentima, McLachlan, Harper and Dupont, Js.

Argued May 4—officially released October 4, 2005

*Donald D. Dakers*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John M. Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DRANGINIS, J. The defendant, Tarrance Lawrence, appeals[1] from the judgment of the trial court dismissing his motion to correct an illegal sentence, filed pursuant to Practice Book § 43-22. On appeal, the defendant claims that the court improperly concluded that it

---

[1] This appeal originally was argued on September 21, 2004, before a panel of three members of this court, which reversed the trial court's judgment dismissing the defendant's motion to correct an illegal sentence and remanded the matter to the trial court with direction to deny the defendant's motion. *State* v. *Lawrence*, 86 Conn. App. 784, 863 A.2d 235 (2005). Thereafter, we granted the motions filed by both the state and the defendant for reconsideration en banc.

lacked jurisdiction to consider the motion. We disagree and, accordingly, affirm the judgment of the trial court.[2]

The defendant was charged with one count each of murder in violation of General Statutes § 53a-54a (a), carrying a pistol without a permit in violation of General Statutes § 29-35 and tampering with evidence in violation of General Statutes § 53a-155 (a) (1). The murder charge alleged that the defendant caused the death of a person by use of a firearm. At trial, the defendant presented a defense of extreme emotional disturbance with respect to the murder charge. The court instructed the jury regarding that defense with the following instruction as the defendant requested: "If you unanimously find that the state has proven each of said elements of the crime of murder beyond a reasonable doubt, and if you also unanimously find that the defendant has proven by the preponderance of the evidence each of the elements of the affirmative defense of extreme emotional disturbance, you shall find the defendant guilty of manslaughter in the first degree with a firearm by reason of extreme emotional disturbance and not guilty of murder." The jury subsequently found the defendant guilty of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a) as well as guilty on the other two counts with which he had been charged. The court rendered judgment in accordance with the verdict and sentenced the defendant to thirty-five years on the count of manslaughter in the first degree with a firearm, two years

---

[2] Because we conclude that the court properly determined that it lacked subject matter jurisdiction to consider the defendant's motion, we do not decide the merits of the defendant's claim that his conviction of manslaughter in the first degree with a firearm was improper. This claim would have been proper for review in the defendant's direct appeal. The defendant also has conceded that the dismissal of his motion, and the unsuccessful appeal therefrom, provide him with the avenue of a further collateral attack on the conviction via a petition for a writ of habeas corpus. See footnote 11 of this opinion.

on the count of carrying a pistol without a permit and three years on the count of tampering with evidence. All sentences were to run concurrently, resulting in a total effective sentence of thirty-five years incarceration. The defendant appealed from his conviction on grounds unrelated to his present claim, and this court affirmed the judgment. *State* v. *Lawrence*, 67 Conn. App. 284, 786 A.2d 1227 (2001), cert. denied, 259 Conn. 919, 791 A.2d 567 (2002).

The defendant subsequently filed in the trial court a motion to correct an illegal sentence pursuant to Practice Book § 43-22,[3] in which he claimed that his conviction for manslaughter in the first degree with a firearm was improper; he asserted that because the jury had acquitted him of murder on the basis of the affirmative defense of extreme emotional disturbance, the proper conviction should have been of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2). The maximum sentence for manslaughter in the first degree is twenty years incarceration; see General Statutes § 53a-35a (5); and, therefore, the defendant, in his motion, requested that the court refer the matter to the sentencing judge. The court, after considering the defendant's claims and the relief requested, dismissed the defendant's motion for lack of jurisdiction. This appeal followed.

The crux of the defendant's claim on appeal is that he was convicted of the wrong crime. He argues that, had he been convicted of the correct crime, namely, manslaughter in the first degree, his sentence of imprisonment could not have exceeded twenty years. He claims, therefore, that, because he was sentenced to thirty-five years imprisonment, his sentence exceeds

[3] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

the statutory maximum permitted under the sentencing statute. The claim of an illegal sentence, then, is dependent on the claim of a wrongful conviction. As long as the defendant stands convicted of manslaughter in the first degree with a firearm, his sentence of thirty-five years imprisonment is valid and legal.[4] The question the defendant's appeal presents to this court, therefore, is whether Practice Book § 43-22 is an appropriate procedural vehicle by which to challenge an allegedly improper conviction or whether the finality of the defendant's conviction, subject to any collateral challenges the defendant may raise via a petition for a writ of habeas corpus, has left the court without jurisdiction to entertain his claim. The answer to the second prong of this question informs the first, so that our preliminary task is to determine the extent of the court's jurisdiction in this matter.

"Jurisdiction involves the power in a court to hear and determine the cause of action presented to it and its source is the constitutional and statutory provisions by which it is created." *Connecticut State Employees Assn., Inc.* v. *Connecticut Personnel Policy Board,* 165 Conn. 448, 456, 334 A.2d 909 (1973); see *Andrew Ansaldi Co.* v. *Planning & Zoning Commission,* 207 Conn. 67, 73, 540 A.2d 59 (1988) (*Shea, J.,* concurring). "Article fifth, § 1 of the Connecticut constitution proclaims that [t]he powers and jurisdiction of the courts

---

[4] The defendant essentially requests this court to remand this case with direction that, on the current conviction of manslaughter in the first degree with a firearm, the court shall not impose a sentence of more than twenty years incarceration. This limitation, however, is governed by no statutory authority. For the defendant to receive the relief he requests, this court would have to vacate his conviction of manslaughter in the first degree with a firearm and remand the case to the trial court with direction that it impose on the defendant a judgment of conviction of manslaughter in the first degree. Only then would the defendant be assured that, pursuant to the legally operative sentencing statute, he could receive only a twenty year sentence.

shall be defined by law, and General Statutes § 51-164s provides that [t]he superior court shall be the sole court of original jurisdiction for all causes of action, except such actions over which the courts of probate have original jurisdiction, as provided by statute. . . ." (Internal quotation marks omitted.) *State* v. *Carey*, 222 Conn. 299, 305, 610 A.2d 1147 (1992), on appeal after remand, 228 Conn. 487, 636 A.2d 840 (1994). "The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." (Citation omitted.) *State* v. *Luzietti*, 230 Conn. 427, 431, 646 A.2d 85 (1994).

"It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence." (Citations omitted.) Id., 431–32. There are a limited number of circumstances in which the legislature has conferred on the trial courts "continuing jurisdiction to act on their judgments after the commencement of sentence . . . . See, e.g., General Statutes §§ 53a-29 through 53a-34 (permitting trial court to modify terms of probation after sentence is imposed); General Statutes § 52-270 (granting jurisdiction to trial court to hear petition for a new trial after execution of original sentence has commenced); General Statutes § 53a-39 (allowing trial court to modify sentences of less than three years provided hearing is held and good cause shown)." (Internal quotation marks omitted.) *State* v. *Boulier*, 49 Conn. App. 702, 705, 716 A.2d 134 (1998). Without a legislative or constitutional grant of continuing jurisdiction, how-

ever, the trial court lacks jurisdiction to modify its judgment. *State* v. *Luzietti,* supra, 230 Conn. 431.[5]

In this case, the defendant's conviction has been finalized on direct appeal. The defendant has not cited, nor have we found, any statutory or constitutional grant of continuing jurisdiction that would permit a trial court to review his conviction prior to his filing a petition for a writ of habeas corpus. The defendant, therefore, relies on our rules of practice authorizing a defendant, by way of a motion, to request that the court correct his allegedly illegal sentence as a way of challenging his conviction under an improper statute.[6] We have recog-

[5] We note that the continuing jurisdiction that the court may have to modify a judgment is separate and distinct from the continuing jurisdiction that the court has to enter further orders enforcing its judgment, which may derive from the court's inherent power to vindicate judgments. See *AvalonBay Communities, Inc.* v. *Planning & Zoning Commission,* 260 Conn. 232, 241, 796 A.2d 1164 (2002).

[6] The dissent cites *State* v. *Waterman,* 264 Conn. 484, 489 n.6, 825 A.2d 63 (2003), for the proposition that the criminal conviction and sentence are one and the same. This statement was incidental to the holding in *Waterman,* which considered whether the imposition of a sexual offender registration requirement after the defendant had begun serving his sentence constituted an alteration in that sentence. Id., 497–98. More importantly, the case on which *Waterman* relied for this statement, *State* v. *Seravalli,* 189 Conn. 201, 205, 455 A.2d 852, cert. dismissed, 461 U.S. 920, 103 S. Ct. 2076, 77 L. Ed. 2d 291 (1983), specifically considered what act by the court in a criminal case constituted a final judgment for purposes of appeal. The *Seravalli* court concluded that the imposition of the sentence, which would conclude the trial court proceedings in any given case, served as the judgment of conviction, and thereby the final judgment, for appeal purposes. This does not translate, however, into the theory that every challenge to a criminal sentence also is a challenge to the underlying conviction. A perfect example is *State* v. *Barksdale,* 79 Conn. App. 126, 829 A.2d 911 (2003), in which the defendant was convicted of sexual assault in the second degree in violation of General Statutes (Rev. to 1997) § 53a-71 (a) (1). Both at the time he committed the crime *and at the time he was sentenced,* in April, 2001; see *State* v. *Barksdale,* Conn. Appellate Court Records & Briefs, April Term, 2003, Record pp. 82a–82b; sexual assault in the second degree was classified as a class C felony, for which the court could impose a maximum sentence of ten years. The court had sentenced the defendant to twenty years imprisonment. While the defendant's appeal was pending, the legislature amended the statute and made sexual assault in the second degree a class B felony,

nized that there is no legislative or constitutional grant of jurisdiction to give the court power to consider the defendant's claim. Unless, therefore, his claim properly fits within the common-law confines of jurisdiction to correct an illegal sentence, this motion to correct can provide him with no recourse or relief.

Under the common law, the court has continuing jurisdiction to correct an illegal sentence. See, e.g., *Bozza* v. *United States*, 330 U.S. 160, 166, 67 S. Ct. 645, 91 L. Ed. 818 (1947) ("an excessive sentence should be corrected . . . by an appropriate amendment of the invalid sentence by the court of original jurisdiction"); *Murphy* v. *Massachusetts*, 177 U.S. 155, 157, 20 S. Ct. 639, 44 L. Ed. 711 (1900) ("in many jurisdictions it has been held that the appellate court has the power, when there has been an erroneous sentence, to remand the case to the trial court for sentence according to law"); *In re Bonner*, 151 U.S. 242, 259–60, 14 S. Ct. 323, 38 L. Ed. 149 (1894) ("where the conviction is correct . . . there does not seem to be any good reason why jurisdiction of the prisoner should not be reassumed by the court that imposed the sentence in order that its defect may be corrected"). That common-law grant of jurisdiction has been codified for the federal courts in rule 35 of the Federal Rules of Criminal Procedure.[7] *Hill* v.

punishable by a maximum sentence of twenty years imprisonment. See Public Acts 2002, No. 02-138, § 7, and General Statutes § 53a-35a (5). On appeal, the defendant argued, and the state agreed, that because the court had sentenced him to twenty years imprisonment, which exceeded the maximum sentence permitted for a class C felony, his sentence was illegal. *State* v. *Barksdale*, supra, 138. In order for the defendant to make this claim, and for this court to review it, it was not necessary for him to challenge his conviction on any ground; his only challenge, in this regard, was to the legality of his sentence, and this court needed to focus its review solely on the sentencing proceeding.

[7] Connecticut law most closely resembles the version of rule 35 (a) of the Federal Rules of Criminal Procedure that was in existence between 1966 and 1984. That rule provided: "Correction of sentence. The court may correct an illegal sentence at any time and may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence." Fed. R. Crim. P. 35 (a) (1984). That rule was amended in 1984 to limit to

*United States*, 368 U.S. 424, 430 n.8, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). In Connecticut, that grant of jurisdiction is recognized and the procedure by which it may be invoked is regulated by Practice Book § 43-22.[8] See *State* v. *Daniels*, 207 Conn. 374, 387, 542 A.2d 306, after remand for articulation, 209 Conn. 225, 550 A.2d 885 (1988), cert. denied, 489 U.S. 1069, 109 S. Ct. 1349, 103 L. Ed. 2d 817 (1989). Rules of practice, however, merely regulate the procedure by which the court's jurisdiction may be invoked; they do not and cannot confer jurisdiction on the court to consider matters otherwise outside the court's jurisdiction.[9] For the court to have jurisdiction to consider the defendant's claim of an illegal sentence, the claim must fall into one of the categories of claims that, under the common law, the court had jurisdiction to review.

Connecticut has recognized two types of circumstances in which the court has jurisdiction to review a claimed illegal sentence. The first of those is when the sentence itself is illegal, namely, when the sentence "either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy,

seven days the time in which a federal court may refashion a sentence, and the court may do so only when there is arithmetical, technical or other clear error. Any other sentence that might have been considered illegal and reparable under the previous rule may be remedied only through a direct appeal or a collateral attack. See National Institute for Trial Advocacy, commentary on rule 35 of the Federal Rules of Criminal Procedure (2004).

[8] Unlike the federal rules, which have been amended pursuant to congressional action; see *United States* v. *Cook*, 890 F.2d 672, 674–75 (4th Cir. 1989); our rules of practice are promulgated by the Superior Court of this state and, as such, cannot abridge, enlarge or modify any substantive right. See General Statutes § 51-14 (a).

[9] "Practice Book rules do not ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) authorizes the judges of the Superior Court to promulgate rules regulating pleading, practice and procedure in judicial proceedings . . . . *Such rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts.*" (Emphasis added; internal quotation marks omitted.) *State* v. *Carey*, supra, 222 Conn. 307.

is ambiguous, or is internally contradictory." *State* v. *McNellis*, 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988); see also *United States* v. *Pavlico*, 961 F.2d 440, 443 (4th Cir.), cert. denied, 506 U.S. 848, 113 S. Ct. 144, 121 L. Ed. 2d 96 (1992). The other circumstance in which a claimed illegal sentence may be reviewed is that in which the sentence is within the relevant statutory limits but was "imposed in a way which violates defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) *State* v. *McNellis*, supra, 444; see also *United States* v. *Guevremont*, 829 F.2d 423, 427 (3d Cir. 1987).[10] Both types of illegal sen-

---

[10] The original language of rule 35 of the Federal Rules of Criminal Procedure, enacted in 1943, referred only to illegal sentences, not sentences imposed in an illegal manner. The United States Supreme Court interpreted that rule in *Hill* v. *United States*, supra, 368 U.S. 424, and foreclosed relief for claims of sentences imposed in an illegal manner. The rule then was amended in 1966 to provide that relief, at least for a specified period of time. Connecticut law can be understood to follow either the version of rule 35 as it existed between 1966 and 1984 or the position of the dissent in *Hill*, which stated: "I would have thought that a sentence imposed in an illegal manner—whether the amount or form of the punishment meted out constitutes an additional violation of law or not—would be recognized as an illegal sentence under any normal reading of the English language. And precisely this sort of common-sense understanding of the language of Rule 35 has prevailed generally among the lower federal courts that deal with questions of the proper interpretation and application of these Rules as an everyday matter. Those courts have expressed their belief that, even where the punishment imposed upon a defendant is entirely within the limits prescribed for the crime of which he was convicted, a sentence imposed in a prohibited manner . . . is an illegal sentence subject to correction under Rule 35." (Internal quotation marks omitted.) Id., 432 (Black, J., dissenting).

We recognize that there is a conflict regarding the extent to which a court has jurisdiction to entertain a motion to correct a sentence imposed in an illegal manner. Compare *State* v. *Francis*, 69 Conn. App. 378, 793 A.2d 1224, cert. denied, 260 Conn. 935, 802 A.2d 88, cert. denied, 537 U.S. 1056, 123 S. Ct. 630, 154 L. Ed. 2d 536 (2002), with *State* v. *Pagan*, 75 Conn. App. 423,

tence claims share the requirement that the sentencing proceeding, and not the trial leading to conviction, be the subject of the attack. Such has been the understanding of the federal courts since the matter first was discussed by the United States Supreme Court in *Hill* v. *United States*, supra, 368 U.S. 424, in which Justice Black, in dissent, recognized that extending rule 35 to cover sentences imposed in an illegal manner "does not of course mean that Rule 35 permits attack upon a sentence based upon mere trial errors. Rule 35 applies to any 'illegal sentence,' *not to any illegal conviction*, and thus by its terms the Rule protects only those rights which a defendant retains even if the judgment of guilt against him is proper." (Emphasis added.) Id., 432 n.2 (Black, J., dissenting). This court adopted that same understanding of the common-law right to challenge an illegal sentence in *State* v. *Mollo*, 63 Conn. App. 487, 491, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001), in which we recognized that "the relief allowed by Practice Book § 43-22 require[s], as a precondition, a valid conviction." The defendant's claim, by its very nature, presupposes an *invalid* conviction and, therefore, Practice Book § 43-22 can provide him with no avenue of relief.[11]

The essence of the defendant's claim is that he was convicted of the wrong crime. He does not claim, nor

816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003). That question is not before us today, and we therefore decline to decide it. We merely note that even if we were to take the more expansive view of *Pagan*, the defendant's claim still does not fall within the confines of a sentence imposed in an illegal manner.

[11] In his brief and at oral argument, the defendant claimed that, regardless of whether relief was granted, our Supreme Court's decision in *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 779 A.2d 80 (2001), required him to bring a motion to correct an illegal sentence prior to petitioning the court for a writ of habeas corpus. Although it is true that *Cobham* requires a defendant challenging the legality of his sentence to bring a motion to correct that sentence prior to petitioning the court for a writ of habeas corpus, it does not place that requirement on an individual who, like the defendant, is challenging the legality of his conviction.

could he, that the sentence he received exceeded the maximum statutory limits for the sentence prescribed for the crime for which he was convicted. The defendant also does not claim that he was denied due process at his sentencing hearing or that his sentence is ambiguous or internally contradictory. If the defendant's claim were to fall into any of those categories, Practice Book § 43-22 would be the proper vehicle for the defendant to seek relief from the court. Because the defendant's claim falls outside that set of narrow circumstances in which the court retains jurisdiction over a defendant once that defendant has been transferred into the custody of the commissioner of correction to begin serving his sentence, the court cannot consider the claim pursuant to a motion to correct an illegal sentence under Practice Book § 43-22. Accordingly, the court properly concluded that the defendant's sentence was not subject to review pursuant to a Practice Book § 43-22 motion to correct an illegal sentence and properly concluded that it lacked the jurisdiction to review the defendant's attack on the underlying conviction.

The judgment is affirmed.

In this opinion LAVERY, C. J., and SCHALLER, BISHOP, DiPENTIMA and HARPER, Js., concurred.

DUPONT, J., with whom FLYNN and McLACHLAN, Js., join, dissenting. I respectfully dissent. The majority construes the motion to correct an illegal sentence filed by the defendant, Tarrance Lawrence, and brought pursuant to Practice Book § 43-22, as an attempt to attack the validity of his underlying conviction, rather than the legality of his sentence, and concludes that the court lacked subject matter jurisdiction for such an attack. I believe the defendant *is* attacking the legality of his sentence, which rests on his claim that his underlying conviction was illegal. The question

is whether the court had subject matter jurisdiction to review the defendant's claim, brought pursuant to Practice Book § 43-22, namely, that his conviction rested on a legally inoperative statute, which, if the defendant is correct, would render his sentence illegal and in need of correction. My view is that the majority holding is inconsistent with the Supreme Court's and this court's interpretation and application of Practice Book § 43-22.

In my opinion, subject matter jurisdiction to review the merits of the defendant's motion exists pursuant to Practice Book § 43-22 because he has asserted a *claim* or a colorable claim that he was sentenced pursuant to a statute that could not, as a matter of law, be legally operative. Jurisdiction does not rest on a resolution of the merits in favor of the defendant to order the relief of a corrected sentence. Jurisdiction rests instead on the claim of the defendant that a legally incorrect statute was used to convict him, which then led to an illegal sentence. On the basis of the facts of this case, I conclude that there is jurisdiction to review the claims of the defendant. I would, accordingly, do so, but would deny the motion on its merits.

The principal issues of this appeal concern subject matter jurisdiction and the scope of Practice Book § 43-22. The Supreme Court has long held that "because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *State* v. *Alexander*, 269 Conn. 107, 112, 847 A.2d 970 (2004). "Subject matter jurisdiction does not rest on the viability of the claims that a court is asked to adjudicate. Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it. . . . A court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it. . . . Once it is determined that a tribunal has

authority or competence to decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, *every presumption favoring jurisdiction should be indulged.*" (Emphasis added; internal quotation marks omitted.) *Olympus Healthcare Group, Inc.* v. *Muller,* 88 Conn. App. 296, 300, 870 A.2d 1091 (2005). "Our practice does not favor the termination of proceedings without a determination of the merits of the controversy where that can be brought about with due regard to necessary rules of procedure." (Internal quotation marks omitted.) *Coppola* v. *Coppola,* 243 Conn. 657, 665, 707 A.2d 281 (1998).

The defendant claims in his motion that once he was found not guilty of murder because he was found to be under the influence of extreme emotional disturbance, he could not be convicted, legally, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a) but could be convicted only of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (2). He claims that the latter is the legally operative statute and that his sentence therefore was legally defective although it conformed to the jury's finding. He seeks a correction of his sentence to the maximum sentence of twenty years incarceration allowable under § 53a-55 (a) (2), instead of the sentence he had received of thirty-five years. He does not claim that any error was made during the course of the trial but that he was convicted and sentenced pursuant to the wrong statute.

The only issue presented by this appeal is whether, indulging every presumption in favor of jurisdiction, the court had jurisdiction or authority, pursuant to Practice Book § 43-22, to correct an illegal sentence, even after the sentence had commenced. The Supreme Court has

held that "the jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence *unless it expressly has been authorized to act.* . . . Practice Book § 43-22, *which provides the trial court with such authority,* provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory." (Citations omitted; emphasis added; internal quotation marks omitted.) *Cobham* v. *Commissioner of Correction,* 258 Conn. 30, 37–38, 779 A.2d 80 (2001). In this case, the defendant is claiming that the illegality of his sentence lies in the fact that the sentence exceeded the *relevant* statutory maximum limit. The defendant's *claim* should not be confused with the merits of that claim.

A purely conceptual beginning is that "[i]t is axiomatic that, in a criminal case, the sentence imposed by the court constitutes the judgment of conviction." *State* v. *Waterman,* 264 Conn. 484, 489 n.6, 825 A.2d 63 (2003). It follows, as a matter of logical necessity, that *every* motion claiming relief pursuant to Practice Book § 43-22 that challenges the legality of a sentence *is also an attack on the legality or validity of the conviction.* The sentence and the conviction are one and the same. *State* v. *Waterman,* supra, 489 n.6. One cannot, therefore, attack the legality of the sentence without also attacking the legality of the conviction. The Supreme Court and this court have held that Practice Book § 43-22 is the proper procedural vehicle through which to challenge the validity of an underlying conviction when the sen-

tence allegedly rests on a conviction based on a legally inoperative statute.

In *State* v. *Cator*, 256 Conn. 785, 781 A.2d 285 (2001), the Supreme Court addressed the scope of Practice Book § 43-22 and the question of the trial court's subject matter jurisdiction over a sentence once the sentence has commenced. In that case, the jury had found the defendant guilty of murder and felony murder, and the court had initially sentenced him "to a total of fifty-five years imprisonment, suspended after fifty years, with five years of probation to follow." *State* v. *Cator*, supra, 788. Later, after the defendant had begun serving his sentence, the state moved to correct the sentence because the imposition of probation was illegal and because the two sentences should be merged. "[T]he trial court merged the defendant's convictions for murder, and felony murder and imposed a total effective sentence of fifty years without a period of probation. . . . The defendant . . . claim[ed] that the trial court did not have the authority to correct a defendant's sentence once that defendant has begun serving the sentence." Id., 803.

Rejecting the defendant's argument, the court noted that "[o]f course, a defendant cannot be punished twice for the same crime. When the trial court has imposed two sentences for the same offense, *the appropriate action is to merge the two convictions and to vacate one of the sentences.*" (Emphasis added.) Id. The Supreme Court concluded that "the trial court had jurisdiction to correct the defendant's sentences pursuant to Practice Book § 43-22, which provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. Both the trial court and [the Supreme Court], on appeal, have the power, at any time, to correct a sentence that is illegal." (Internal quotation marks

omitted.) *State* v. *Cator*, supra, 256 Conn. 803–804. Concluding that the original sentence imposed by the trial court was illegal, the court held that the trial court had jurisdiction to correct the sentences pursuant to Practice Book § 43-22. *State* v. *Cator*, supra, 804. Thus, even though the defendant was charged with both murder and felony murder, and the jury found him guilty of both crimes, and the court initially sentenced him for both crimes, the court still retained jurisdiction, after the defendant's sentence had begun, pursuant to Practice Book § 43-22, to resentence him for only one crime. Thus, the court concluded that one of the convictions was illegal as a matter of law. As in *Cator*, the defendant's claim in this case is that his sentence is illegal because it is based on a void conviction for a statutory offense, which on the facts prevailing in the case, could not legally be the operative statute for his conviction.

It is noteworthy that in *Cator*, the Supreme Court rejected the defendant's reliance on *State* v. *Luzietti*, 230 Conn. 427, 431–34, 646 A.2d 85 (1994), for the proposition that the court was without jurisdiction to correct his sentence because at "common law, once a defendant has begun serving his sentence, the trial court no longer has jurisdiction to alter its judgment in the absence of a legislative or constitutional grant of continuing jurisdiction. Id., 431." (Internal quotation marks omitted.) *State* v. *Cator*, supra, 256 Conn. 804. The court expressly held that "the trial court had jurisdiction to alter the sentence *pursuant to Practice Book § 43-22* . . . ." (Emphasis added.) *State* v. *Cator*, supra, 804–805.

In *State* v. *Raucci*, 21 Conn. App. 557, 575 A.2d 234, cert. denied, 215 Conn. 817, 576 A.2d 546 (1990), the defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 935, now § 43-22, and moved the court to vacate one count of the conviction. In *Raucci*, "[t]he defendant was originally convicted on four counts: larceny in the first degree; conspiracy to

commit larceny in the first degree; burglary in the third degree; and conspiracy to commit burglary in the third degree. In November, 1983, the court imposed sentence as follows. On the convictions of larceny in the first degree and conspiracy to commit larceny in the first degree, the court imposed concurrent sentences of not less than ten nor more than twenty years. On the convictions of burglary in the third degree and conspiracy to commit burglary in the third degree, the court sentenced the defendant to not less than two and one-half nor more than five years, to run consecutively, both as to each other and as to the first two sentences. The total effective sentence, therefore, was not less than fifteen nor more than thirty years." *State* v. *Raucci*, supra, 558.

"In April, 1987, subsequent to the defendant's sentencing, [this court] held in *State* v. *Stellato*, 10 Conn. App. 447, 456–57, 523 A.2d 1345 (1987), that where a defendant is tried on multiple conspiracy counts arising out of a single agreement, the *trial court must render judgment and sentence the defendant* on only that conspiracy to commit the most serious offense. . . . On the basis of *Stellato*, the defendant moved, pursuant to Practice Book § 935 [now § 43-22], to vacate the conviction for conspiracy to commit burglary in the third degree. The court granted the defendant's motion, and vacated that conviction." (Citation omitted; emphasis added.) *State* v. *Raucci*, supra, 21 Conn. App. 559.

"The defendant also moved that the total effective sentence be reduced to not less than twelve and one-half or more than twenty-five years, by eliminating the term originally imposed on the vacated conviction, namely, not less than two and one-half nor more than five years, and leaving intact the sentences imposed for the three remaining convictions." Id. Declining the defendant's invitation, the court "resentenced the defendant on the three remaining counts so as to reflect

its original sentencing intent, and reimposed a total effective sentence of not less than fifteen nor more than thirty years." Id. The defendant appealed, claiming that "the trial court had no authority to increase a valid sentence once its execution had commenced . . . ." Id., 560.

The principal issue facing this court in *Raucci* concerned the court's power to resentence a defendant on the granting of a motion to correct an illegal sentence pursuant to Practice Book § 43-22. There is, however, a preliminary issue that is assumed in *Raucci*, namely, the scope of Practice Book § 43-22 and whether that section is the proper procedural device with which to attack the validity of the conviction. There can be no question that in *Raucci* the defendant was convicted of four counts and that, as to each count, the sentence imposed was within the maximum allowable sentence under the operative statutes. Facially, therefore, the sentence imposed on each count was within the statutory limits of each count. This court recognized, however, that the defendant's sentence was nevertheless illegal, *as a matter of law*, because pursuant to *State* v. *Stellato*, supra, 10 Conn. App. 456–57, when a "defendant is tried on multiple conspiracy counts arising out of a single agreement, *the trial court must render judgment and sentence* the defendant on only that conspiracy to commit the most serious offense." (Emphasis added.) *State* v. *Raucci*, supra, 21 Conn. App. 559.

In *State* v. *Barksdale*, 79 Conn. App. 126, 829 A.2d 911 (2003), this court recognized that Practice Book § 43-22 is the proper procedural vehicle through which to assert a claim that a sentence imposed is illegal because it did not conform to the legally operative statute as of the date of the crime. Id., 138–39. In *Barksdale*, the defendant claimed that he was sentenced illegally under General Statutes § 53a-71 (a) (1) because at the time he committed the assault, the violation of § 53a-

71 (a) (1) was a class C felony for which the maximum period of incarceration was ten years. "Subsequent to the verdict, the court . . . sentenced the defendant. As to the defendant's conviction of three counts of having violated § 53a-71 (a) (1), the court sentenced him to twenty years in the custody of the commissioner of correction, execution suspended after four years, with twenty years of probation on each of the three counts of sexual assault in the second degree. The sentences were to be served concurrently." *State* v. *Barksdale*, supra, 138. This court concluded that the defendant had in fact been sentenced under the wrong statute and ordered that the defendant be resentenced according to the law. Id., 138–39.

*Barksdale* stands for the seemingly obvious and uncontroversial proposition that a sentence is illegal within the meaning of Practice Book § 43-22 if it is not in accord with the legally operative statute at the time the crime is committed. There are a number of possible ways in which a sentence could be illegal. One could be sentenced to a term of incarceration in excess of the applicable statutory maximum. One could also, for example, due to a scrivener's error in drafting the charge to the jury, be found guilty of a crime under a statute that is different from the one cited in the information and under which the trial proceeded. One could also be found guilty by a jury of a crime that mirrored the charge and followed the instructions, but of which the defendant could not be found guilty because it was legally inapplicable.

That latter scenario is precisely the type of claim that the defendant asserts. The defendant claims only that the court could not, as a matter of law, accept a verdict of guilty of manslaughter in the first degree with a firearm in violation of § 53a-55a (a) and impose a sentence of incarceration in accord with such a verdict if the legally operative statutory scheme was followed,

which he claims was that for the crime of manslaughter in the first degree in violation of § 53a-55 (a) (2). The sentence imposed after accepting the guilty verdict, on the basis of the legally inoperative statute, according to the defendant, is necessarily illegal. The only question this court must determine is whether such a claim belongs to *the class of cases* for which the court has authority or competence to decide because of the jurisdiction granted by Practice Book § 43-22. On its face, it would appear that the defendant's motion in the present case satisfies this very low threshold inquiry.

It is worth stressing that *Cator* and *Raucci* can be construed as attempts to use Practice Book § 43-22 to "attack the validity of the underlying conviction," which would, according to the reasoning of the majority, deprive the court of jurisdiction over the motion. Those courts, however, did not agree with the majority. In *Cator*, the defendant was convicted of both murder and felony murder, and he was sentenced, within the prevailing statutory limits, for each crime. There was no claim in *Cator* that the sentence the defendant received exceeded the maximum allowable sentence under the statutory offenses of which he was found guilty. The Supreme Court held that the sentence was illegal even though the claim of an illegal sentence was dependent on the claim of a wrongful conviction.

The case of *State* v. *Raucci*, supra, 21 Conn. App. 557, is an example of the use of Practice Book § 43-22 (formerly § 935) to challenge the validity of an underlying conviction. The defendant was convicted of four crimes, larceny in the first degree, conspiracy to commit larceny in the first degree, burglary in the third degree and conspiracy to commit burglary in the third degree. The trial court imposed a sentence as to each conviction, and each sentence conformed to the relevant statutory framework. There was no claim that a sentence imposed, on its face, exceeded the maximum allowable

sentence. Nevertheless, this court concluded that the sentence imposed was illegal because "where a defendant is tried on multiple conspiracy counts arising out of a single agreement, *the trial court must render judgment and sentence* the defendant on only that conspiracy to commit the most serious offense charged." *State* v. *Raucci,* supra, 559. The court acknowledged that a motion to correct an illegal sentence was the proper procedural vehicle to remedy that illegality, which included the vacation of the judgment of conviction. Id.

In this case, unlike *State* v. *Mollo,* 63 Conn. App. 487, 776 A.2d 1176, cert. denied, 257 Conn. 904, 777 A.2d 194 (2001), on which the majority relies, the defendant takes no issue with the underlying factual basis that resulted in the conviction against him. Rather, he asserts that, as a matter of law, the only crime for which a judgment of conviction and sentence could stand, in light of a finding of not guilty of murder by reason of extreme emotional disturbance, is manslaughter in the first degree, which carries a maximum twenty year sentence. If the defendant is correct, he has been sentenced to fifteen years more than he should serve if the legally operative statute had been used to convict and sentence him.

In *Cobham* v. *Commissioner of Correction,* supra, 258 Conn. 37, the petitioner, in a habeas corpus petition, stated that he had entered pleas in accordance with a plea agreement and that his mittimus varied from the sentence of the court. The petitioner contended that he was incarcerated in accordance with an illegal sentence and requested the habeas court to correct his sentence to eliminate the disparity, although he did not seek to vacate his plea or reverse his conviction. Id., 35–36. The court held that before seeking to correct an illegal sentence in the habeas court, a defendant must raise the issue on direct appeal or in a motion under Practice Book § 43-22. *Cobham* v. *Commissioner of Correction,*

supra, 38. The court noted that Practice Book § 43-22 applies to a "purportedly illegal sentence . . . ." *Cobham* v. *Commissioner of Correction*, supra, 38. In the present case, the defendant does not seek a reversal of his conviction, but seeks to raise the claim that a legally inoperative statute was used in his conviction and sentencing. For almost four years, ever since the release of *Cobham*, defendants have been well-advised to seek relief pursuant to Practice Book § 43-22, rather than habeas petitions, for purportedly illegal sentences. After the majority opinion in the present case, such defendants will not know whether to "zig" to the trial court where such claims will be dismissed for lack of jurisdiction, or "zag" to the habeas court, where their claims, as in *Cobham*, will also be dismissed.

The only question to be resolved by the majority in this case is whether the court had the authority to adjudicate the type of controversy presented by the motion before it. The ultimate viability of the defendant's claim is irrelevant to the issue of whether the court has subject matter jurisdiction.[1] "Once it is determined that a tribunal has authority or competence to

---

[1] If, as I conclude, the court had jurisdiction to entertain the claims of the defendant, the next question would be whether the defendant was entitled to the relief of a corrected sentence. I note briefly that I do not agree with the defendant that his sentence is illegal. General Statutes § 53a-54 (a) provides that the affirmative defense of extreme emotional disturbance shall not constitute a defense to, or preclude a conviction of, manslaughter in the first degree *or any other crime*. In this case, the defendant was also found guilty of carrying a pistol without a permit in violation of General Statutes § 29-35 and was charged with the "intent to cause the death of another person . . . by use of a firearm." *State* v. *Lawrence*, 86 Conn. App. 784, 794, 863 A.2d 235 (2004). On the facts of this case, the defendant properly was found guilty of manslaughter in the first degree with a firearm once the jury had determined that the defendant committed the proscribed act, namely, murder with a firearm, under the influence of extreme emotional disturbance. Nothing in § 53a-54 (a) prohibits such a result. Indeed, that statutory subsection clearly states that the affirmative defense shall not prevent a conviction for any crime other than murder. See *State* v. *Lawrence*, supra, 794.

decide the class of cases to which the action belongs, the issue of subject matter jurisdiction is resolved in favor of entertaining the action. . . . It is well established that, in determining whether a court has subject matter jurisdiction, *every presumption favoring jurisdiction should be indulged.*" (Internal quotation marks omitted.) *Olympus Healthcare Group, Inc.* v. *Muller,* supra, 88 Conn. App. 300. In this case, especially in light of *Cator, Raucci* and *Barksdale,* the defendant has raised a claim that belongs to the class of cases over which the court has jurisdiction.

For all of the foregoing reasons, I respectfully dissent.