STATE OF CONNECTICUT *v.* FRANCISZEK MARCISZ
(AC 26879)

Flynn, C. J., and Bishop and Lavine, Js.

Argued September 13, 2006—officially released January 2, 2007

---

32

*Robert J. McKay*, for the appellant (defendant).

*Eileen F. McCarthy*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Sean Jones*, former deputy assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Franciszek Marcisz, appeals from the judgment of conviction, rendered after a trial to the court, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a. On appeal, the defendant claims that (1) there was insufficient evidence for the trial court to find him guilty and (2) the court's knowledge of a part B information prior to rendering its decision violated his rights to a fair trial and to due process. We disagree and accordingly affirm the judgment of the trial court.

The following facts are relevant to the resolution of the defendant's appeal. The court found that Officer Kenneth Miller of the Farmington police department was traveling north on Route 177 at about 1:30 a.m. on September 2, 2004, when he observed a blue Ford Crown Victoria operating erratically, at one point causing the driver of another car to swerve to avoid being hit. Miller watched the car as it suddenly was driven to the side of the road and stopped. Concerned that the driver might be lost, Miller drove his cruiser closely alongside the blue car, aligning his passenger side window with the driver's side window, and stopped briefly. The driver turned his head and looked at Miller. Miller "had a perfect [view]" and "clearly saw the [the defendant's] face" through the open window of his cruiser. The defendant was the only person in the vehicle. After seeing Miller, the defendant drove ahead a few feet and turned into the nearest driveway. Miller used the computer in his vehicle to check the license plate of the defendant's car and discovered that it was owned by the defendant, who lived approximately fifteen minutes away by car. Miller then observed the defendant walking along the road with an unsteady and stumbling gait. When he came closer to the defendant, Miller noticed a strong odor of alcohol emanating from him and observed that his eyes were glassy and bloodshot. Miller gave the defendant a field sobriety test, which he failed, and then arrested the defendant.

At trial, the state charged the defendant in a two part information, proceeding in the first part on charges of operating a motor vehicle while under the influence of intoxicating liquor and operating a motor vehicle while his license was under suspension. After the state rested, the defendant moved for a judgment of acquittal on the charge of operating a motor vehicle while his license was under suspension, claiming that the state had offered no evidence in support thereof. The court

granted the motion and rendered judgment of acquittal on that charge only. The court then asked whether the state planned to introduce evidence that this was a second offense. The prosecutor began to respond to the court's question when defense counsel intervened and asserted that it was not the proper time in the trial to discuss prior convictions.[1] At no time did the defendant object to the court's purported knowledge of the part B information. The court subsequently found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor despite the defendant's assertion that he was not the operator. Additional facts will be set forth as necessary.

## I

The defendant first claims that the evidence was insufficient to support the court's finding of guilt on the charge of operating a motor vehicle while under the influence of intoxicating liquor. Specifically, the defendant argues that the state failed to prove beyond a reasonable doubt that he was the operator of the vehicle. We disagree.

We begin by setting forth the applicable standard of review.[2] "The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply

---

[1] The defendant asserts on appeal that a review of the colloquy following the court's question indicates that the court acquired knowledge of the part B information before rendering its decision on the charge of operating a motor vehicle while under the influence of intoxicating liquor. The state responds that the transcript should be read to suggest that the court was referring to the part B information on the charge of operating a motor vehicle with a suspended license only and that the defendant's counsel was responsible if the court learned of the part B information on the other charge. As the record is unclear, we decline to speculate as to whether the court learned of the part B information.

[2] The defendant seeks to prevail on his unpreserved claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). *Golding* review is not necessary to resolve the claim. See *State* v. *Pranckus*, 75 Conn. App. 80, 85, 815 A.2d 678 (defendant found guilty on basis of insufficient evidence has been deprived of constitutional right and would therefore necessarily

a two part test. First, we construe the evidence in the light most favorable to sustaining the [decision]. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the [fact finder] if there is sufficient evidence to support the [decision]." (Internal quotation marks omitted.) *State* v. *Jones*, 93 Conn. App. 200, 203–204, 888 A.2d 180, cert. denied, 277 Conn. 920, 895 A.2d 790 (2006). "On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's finding] of guilty." (Internal quotation marks omitted.) *State* v. *Gary*, 273 Conn. 393, 406, 869 A.2d 1236 (2005).

At trial, the defendant presented evidence in support of an alternative factual scenario of the events of September 2, 2004. He claims that he called Sophia Chorazy from the Haller Post, a Polish club in New Britain, because he had been drinking and needed a ride home. Chorazy and her son drove to the club in Chorazy's car and picked up the defendant. The son got into the driver's seat of the defendant's car and began to drive the defendant home while the defendant fell asleep in the passenger's seat. Chorazy followed behind the defendant's vehicle. At some point, the son saw a police car. He drove to the side of the road, exited the defendant's vehicle and got into his mother's vehicle because he was concerned about driving without a license. The son left the defendant asleep in the passenger's seat. The defendant woke up, exited the car and started to

meet the four prongs of *Golding*), cert. denied, 263 Conn. 905, 819 A.2d 840 (2003).

walk home when he was apprehended by Miller. At trial, Chorazy, her son and the defendant testified to this exculpatory version of events.

Although the defendant attempted to prove that he did not operate the vehicle, the court was free to disbelieve the defense witnesses' testimony and to credit the testimony of the police officer, who testified that he saw the defendant driving. "It is the [fact finder's] right to accept some, none or all of the evidence presented. . . . Moreover, [e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The court] is free to juxtapose conflicting versions of events and determine which is more credible. . . . It is the [finder of fact's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses." (Citation omitted; internal quotation marks omitted.) *State* v. *Pranckus*, 75 Conn. App. 80, 87, 815 A.2d 678, cert. denied, 263 Conn. 905, 819 A.2d 840 (2003). "[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal." (Internal quotation marks omitted.) *State* v. *Gary*, supra, 273 Conn. 406.

The court explained in its oral decision that it found that the defendant's version of events lacked credence due to the fact that the police officer was certain that he "got a clear look" at the defendant driving when the officer rolled down his window and drove his vehicle next to the defendant's vehicle. The court also based its credibility determination on Miller's ability to identify the defendant several months later at trial as the person he had seen sitting in the driver's seat and on his testimony that he had never seen Sophia Chorazy's son before. Moreover, the court stated that it did not

believe the defendant's version of events because the time element, as testified to by the defense witnesses, was not consistent with the time or date of the arrest, nor was the testimony of the sequestered defense witnesses consistent.

Our review of the record, therefore, persuades us that the court reasonably could have concluded that the cumulative force of the evidence established beyond a reasonable doubt that the defendant was indeed the operator of the motor vehicle. Accordingly, we are not persuaded by the defendant's insufficiency of the evidence argument.[3]

---

[3] The dissent contends that the court improperly gave special weight to Miller's identification of the defendant as the operator of the motor vehicle solely because he was a police officer. The dissent acknowledges, however, that the defendant briefed this issue only on a claim of insufficiency of the evidence. Therefore, the sole issue presented for our determination is whether the record reveals that there was sufficient evidence from which the trier could find guilt. See *State* v. *Jones*, supra, 93 Conn. App. 203–204.

Moreover, the defendant in his brief failed to challenge adequately the court's statement regarding the weight given to Miller's identification of the defendant. He mentioned the language only once in his facts section and neglected to present any legal argument. "Assignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court." (Internal quotation marks omitted.) *State* v. *Abraham*, 84 Conn. App. 551, 561, 854 A.2d 89, cert. denied, 271 Conn. 938, 861 A.2d 514 (2004). It is inadvisable for this court to address an issue, sua sponte, rather than at the behest of one of the parties because it deprives them of an opportunity to brief the issue. See *Lynch* v. *Granby Holdings, Inc.*, 230 Conn. 95, 99, 644 A.2d 325 (1994).

Finally, concerning the substance of the claim, the dissent quotes only a portion of the trial court's statement. The entire statement provides: "[W]e're not talking about the average eyewitness. We're talking about a police officer who, as I recall, has been four years—or maybe it was two years at the time—at the Farmington police department, and I think he said he was security at West Farms Mall, and he's a professional and his eyewitness testimony has to be given more credence than the average citizen, who can be mistaken." The full quotation reveals that this statement is susceptible to two reasonable interpretations: that the court credited Miller solely because he was a police officer or that it credited him because of the experience and knowledge he had gained in making eyewitness identifications as part of his employment. Given the inadequacy of the record on the issue and the ambiguity of the remarks, we would be unwilling to conclude

## II

The defendant's second claim is that the court's purported knowledge of the part B information prior to rendering its decision on the first part of the information violated his rights to due process and a fair trial. The dispositive issue is one of reviewability. The defendant failed to preserve his claim, as he neither raised the issue of the court's disqualification when he became aware of the claimed potential for bias or at any other time during the trial. The defendant, accordingly, seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), and the plain error doctrine. See Practice Book § 60-5. We decline to address the claim, as we conclude that it is not properly before us.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional [magnitude] alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two *Golding* requirements involve whether the claim is reviewable, and the second two involve whether there was constitutional error requiring a new trial." (Emphasis added; internal quotation marks omitted.) *State* v. *Fagan*, 280 Conn. 69, 89–90, 905 A.2d 1101 (2006).

We decline to review this claim under *Golding* because the defendant's right to an information in two parts is based on Practice Book §§ 36-14 and 37-11, and

that the court's credibility determination was improper even if that issue were before us properly.

as such, is not a constitutional right.[4] We therefore conclude that the defendant has failed to satisfy the second prong of *Golding*, as the claim alleging the violation of a fundamental right is not of constitutional magnitude.

We also decline to reverse the defendant's conviction under the plain error doctrine in accordance with our Supreme Court's ruling in *State* v. *Fitzgerald*, 257 Conn. 106, 777 A.2d 580 (2001).[5] In that case, the Supreme Court reversed the judgment of this court, concluding that the prosecutor's improper disclosure of the part B information to the court before trial on a charge of operating a motor vehicle while under the influence of intoxicating liquor did not constitute plain error and was therefore not reviewable. See id.[6]

As in *Fitzgerald*, the defendant in the present case failed to move for judicial disqualification and raises

---

[4] Practice Book § 36-14 provides in relevant part: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts . . . . In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. . . ." In addition, Practice Book § 37-11 provides in relevant part: "[P]rior to the commencement of trial, the clerk shall notify the defendant, in the absence of the judicial authority, of the contents of the second part of the information. . . ."

[5] As the state points out, plain error is a rule of reversibility, not reviewability. *State* v. *Ramirez*, 94 Conn. App. 812, 826, 894 A.2d 1032, cert. denied, 278 Conn. 915, 899 A.2d 621 (2006). "[Such] review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . An important factor in determining whether to invoke the plain error doctrine is whether the claimed error result[ed] in an unreliable verdict or a miscarriage of justice." (Citations omitted; internal quotation marks omitted.) *State* v. *Fitzgerald*, supra, 257 Conn. 111.

[6] In *State* v. *Fitzgerald*, supra, 257 Conn. 109, the part B information was inadvertently raised by the prosecutor. The Court stated that "[w]e leave for another day the situation in which a part B information is improperly revealed and the defendant can demonstrate either a prosecutor's illicit motivation or biased judicial behavior resulting from the improper revelation." Id., 113–14. We are not persuaded that the defendant in this case has demonstrated either situation.

the claim for the first time on appeal. See id., 116. Despite his assertion that his rights to due process and a fair trial were violated by the court's purported knowledge of the part B information, the defendant has failed to establish that the claimed error resulted in an unreliable finding of guilt or a miscarriage of justice. See id., 112. The court found that the state satisfied its burden by proving guilt beyond a reasonable doubt. Our review of the evidence supports this conclusion. Any harm caused by the court's knowledge of the prior conviction did not undermine the validity of the finding of guilty. We accordingly decline to reverse the defendant's conviction under the plain error doctrine.

The judgment is affirmed.

In this opinion BISHOP, J., concurred.

FLYNN, C. J., dissenting. I respectfully dissent.

The court was under no obligation to state reasons for its finding of guilt in this trial to the court. Nevertheless, it did. And, although the defendant briefed this case on the basis of his claim of insufficiency of the evidence, one could argue that the claimed impropriety, although directed to the weight to be given to police testimony, resulted in evidentiary insufficiency. Accordingly, I would reach the issue of the improper weight given to the testimony of Officer Kenneth Miller by the trial court.

In this case, only one witness identified the defendant as the operator of the motor vehicle, and that witness was Officer Miller. Other witnesses testified that the defendant did not operate the motor vehicle or, in the case of other police officers, that they did not witness him operate the vehicle. Officer Miller's testimony and eyewitness identification of the defendant was given credence by the court over other testimony in this case

because, as the court explained, Officer Miller was "a professional and his eyewitness testimony has to be given more credence than the average citizen, who can be mistaken."

In my opinion, this special weight could not be given properly to police testimony, and the error could not be deemed harmless because Officer Miller was the only witness providing evidence of a necessary element of the crime, namely, operation of the motor vehicle.

It has been time-honored in charges to the jury that the court instructs: "The testimony of a police officer is entitled to no special or exclusive sanctity merely because it comes from a police officer. . . . And in the case of police officers, you should not believe nor disbelieve them merely because they are police officers." D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (1986) § 3.11, p. 94.

"It is improper to suggest that the [fact finder] should accord greater weight to the testimony of police officers on account of their occupational status. Indeed, Connecticut courts routinely instruct juries that they should evaluate the credibility of a police officer in the same way that they evaluate the testimony of any other witness, and that the jury should 'neither believe nor disbelieve the testimony of a police official just because he is a police official.' J. Pellegrino, Connecticut Selected Jury Instructions: Criminal (3d Ed. 2001) § 2.29, p. 74."[1]

---

[1] J. Pellegrino, Connecticut Selected Jury Instructions: Criminal, supra, § 2.29, p. 74, sets forth the following standard jury instruction in cases where police testimony has been presented to the jury: "Police officials have testified in this case. You must determine the credibility of police officials in the same way and by the same standards as you would evaluate the testimony of any ordinary witness. The testimony of a police official is entitled to no special or exclusive weight merely because it comes from a police official. You should recall his demeanor on the stand, his manner of testifying, and weigh and balance it just as carefully as you would the testimony of any other witness. You should neither believe nor disbelieve the testimony of a police official just because he is a police official."

*State* v. *Thompson,* 266 Conn. 440, 469, 832 A.2d 626 (2003). Certainly, this clear, direct and time-honored principle must apply to bench trials as well as jury trials.

Accordingly, I would conclude that the court's record statement that it was giving more credence to Officer Miller's testimony because he was a police officer was improper. Because Officer Miller was the sole witness to testify that he saw the defendant operating the motor vehicle, the impropriety was not harmless. I would reverse the defendant's conviction and order a new trial.

I respectfully dissent.