# STATE OF CONNECTICUT *v.* BRIDGET M.[1]
# (AC 30350)

Harper, Robinson and Borden, Js.

Argued April 7—officially released October 5, 2010

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

*Stephanie L. Evans*, special public defender, for the appellant (defendant).

*Raheem L. Mullins*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Amy L. Bepko-Mazzocchi*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Bridget M., appeals from the judgment of conviction, rendered after a jury trial, of assault of an elderly person in the third degree in violation of General Statutes § 53a-61a (a) (1), two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (2) and disorderly conduct in violation of General Statutes § 53a-182 (a) (1). On appeal, the defendant claims that the trial court improperly denied in part and granted in part her motion for a judgment of acquittal and instructed the state to strike only portions of the two counts of risk of injury to a child from the information. We conclude that the defendant's claim is not reviewable and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The defendant has a son, M, who, at the time of the incident, was six years old. M has sickle-cell anemia, for which he receives hospital treatments, and asthma that causes

attacks and requires medication. M is unable to take his medication himself and requires that his father administer it to him. The defendant also has a daughter, D, who, at the time of the incident, was thirteen years old.

Currently, M's father has custody of M, and the defendant has visitation rights. One of the victims, E,[2] lives with M's father and M. On June 24, 2007, the defendant went with D to the home of M's father to pick up M for a visit. The defendant returned to the residence at about 6 or 7 p.m. and went into the house, upstairs and into the bathroom to give M a bath. D went into the room that M shared with his father, which was also upstairs. The only other person home at that point was E.

The defendant testified that while she was in the bathroom, she heard yelling outside the door. E was telling D to get off of the bed. E testified that the defendant stepped out of the bathroom to yell at her for speaking to D like that and then came forward and punched her in the face, saying, "you fucking witch, take that. I'm going to call the police." E testified that at that point the defendant took D and left the house, leaving E alone with M until E's daughter came by to check on her.

The state charged the defendant with assault of an elderly person in the third degree in violation of § 53a-61a (a) (1), two counts of risk of injury to a child in violation of § 53-21 (a) (1),[3] breach of the peace in the

---

[2] At the time of the incident, E was eighty years old.

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) *wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation* that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, *or does any act* likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ." (Emphasis added.)

second degree in violation of § 53a-181 (a) (2), and two counts of disorderly conduct in violation of § 53a-182 (a) (1) and (2), respectively.[4] In the information, the state wrote the charges of violation of § 53-21 (a) (1) in the conjunctive.[5]

After the presentation of the state's case-in-chief, the defendant orally moved for a judgment of acquittal. The defendant argued, with respect to count two, which charged her with risk of injury to and impairing the morals of a child as to M, that M was not present during the altercation between the defendant and E and was in another room with no view of the defendant and E. The state, in response, argued that the charge referred to M's health problems and the fact that he was left alone with the injured victim, E, unable to take care of himself had his health declined. With respect to count three, which charged the defendant with risk of injury to and impairing the morals of a child as to D, the defendant argued that there was no act toward D that would violate the statute because the conflict started with E's approaching D and ended in an altercation between the defendant and E. The state responded that

_____

[4] Because the jury found the defendant guilty of disorderly conduct in violation of § 53a-182 (a) (1), as alleged in the information's fifth count, the jury did not consider the information's sixth count, which charged her with disorderly conduct in violation of § 53a-182 (a) (2). The court had stated during its jury charge that if the defendant were found guilty under the fifth count, the jury need not consider the sixth count because the state had alleged the sixth count as an alternative way to commit disorderly conduct. Thereafter, during the sentencing proceeding, the court dismissed the sixth count.

[5] Count two of the information reads: "[The defendant] . . . wilfully and unlawfully caused a child under the age of sixteen years, To wit: [M] . . . to be placed in such a situation that the life and limb of such child was endangered and the health of such child was likely to be injured, in violation of [§] 53a-21 (a) (1) . . . ."

Count three of the information, as to D, reads: "[The defendant] . . . wilfully and unlawfully caused a child under the age of sixteen years, To wit: [D] . . . to be placed in such a situation that the morals of such child were likely to be impaired, in violation of [§] 53a-21 (a) (1) . . . ."

the charge referred to the defendant's placement of D in a situation in which her morals were likely to be impaired because she witnessed the altercation.

With respect to both the second and third counts, the court granted the motion for a judgment of acquittal as to the act portion of § 53-21 (a) (1), which is violated when a defendant does "an act likely to impair the health and morals of such child." Also, in count two, because of M's young age and inability to appreciate the situation, the court granted the motion for a judgment of acquittal as to the part of the situational portion of § 53-21 (a) (1), which is violated when a defendant places a child in a situation in which his "morals [are] likely to be impaired." The court ordered the state to strike such portions from the charge and to revise the information accordingly before presenting it to the jury. The defendant objected on the ground that, with respect to the situational portion of count two, the state's argument was speculative because "much worse could have happened to [E] but it didn't." Thus, E was not so incapacitated that she could not tend to M had he suffered any health problems.

On September 24, 2009, the court rendered judgment in accordance with the jury verdict of guilty as to counts one through five of the amended information. The court then sentenced the defendant to a total effective term of five years imprisonment, execution suspended after eighteen months, with three years probation. This appeal followed.

The defendant claims that the trial court violated her right to a fair trial under the sixth and fourteenth amendments to the United States constitution by granting in part her motion for a judgment of acquittal because Practice Book § 42-41 states in relevant part that the "judicial authority shall either grant or deny the motion [for a judgment of acquittal] . . . ." The

defendant argues that Practice Book § 42-41 only allows the court to grant or deny a motion for a judgment of acquittal in its entirety and does not allow the court to grant a motion for a judgment of acquittal as to one statutory alternative and not another, if the two alternatives are contained within the same count.[6] The defendant argues that her claim is of constitutional magnitude because, by dismissing only portions of the subject counts instead of the entire counts, the court reduced the state's burden with respect to the elements required to convict her under the counts as originally written. The defendant argues that "because impartiality and fairness are both essential elements of due process and a fair trial, the prejudicial impact on a defendant when the court acts as an arm of the prosecution to amend charges to which the defendant had already pleaded not guilty to, and to which the state had already presented its theory and case in chief to the jury, and had failed to meet its burden of proof as to all elements within counts two and three, the integrity and fairness of the proceedings are compromised to the detriment of the defendant."

The defendant's claim is unpreserved,[7] and she seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40,

[6] *State* v. *Wohler*, 231 Conn. 411, 415, 650 A.2d 168 (1994), explains that the state is required to charge in the conjunctive as to multiple statutory alternatives contained within one count. Therefore, though difficult to decipher, we understand the defendant's argument to be that the alleged violation of Practice Book § 42-41 equated to a violation of the defendant's constitutional right to a fair trial.

[7] Though the defendant objected to the court's denial in part of the motion for a judgment of acquittal, she did so on the ground that there was no evidence that she violated the situational prong of § 53-21 (a) (1) as to M. Although an appellant does not have to articulate every theory to the trial court that she presents on appeal, those not articulated must be intertwined with those specifically stated and related to a single legal claim. See *Rowe* v. *Superior Court*, 289 Conn. 649, 662–63, 960 A.2d 256 (2008). At trial, the defendant's objection was based on insufficiency of the evidence, whereas on appeal she claims that her constitutional due process right to a fair trial was violated. Therefore, the claim was not preserved.

567 A.2d 823 (1989).[8] *Golding's* first two prongs relate to whether a defendant's claim is reviewable, and the last two relate to the substance of the actual review. *State* v. *Jarrett*, 82 Conn. App. 489, 492 n.1, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).[9]

Because the first two prongs of the *Golding* standard must be met for the defendant's claim to be reviewed, a determination that one is not satisfied makes the claim unreviewable. *State* v. *Golding*, supra, 213 Conn. 239. In order for the defendant's constitutional argument to prevail, she must show that the granting of a motion for a judgment of acquittal, made pursuant to Practice Book § 42-41, as to portions of individual counts, instead of the entire counts, implicates her constitutional rights. The defendant's "right," as argued, is based on an alleged violation of Practice Book § 42-41. An allegation of a violation of a rule of practice does not necessarily rise to the level of a violation of a constitutional right.[10] See *State* v. *Rosario*, 113 Conn. App. 79, 97–98, 966 A.2d 249, cert. denied, 291 Conn. 912, 969 A.2d 176 (2009); *State* v. *Marcisz*, 99 Conn. App. 31, 38,

[8] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

[9] The defendant also sought review under the plain error doctrine. See Practice Book § 60-5. We decline to afford the claim plain error review because the issue presented is not one of those truly extraordinary situations that the doctrine is intended to remedy. See *State* v. *Gamble*, 119 Conn. App. 287, 292 n.2, 987 A.2d 1049, cert. denied, 295 Conn. 915, 990 A.2d 867 (2010).

[10] We, therefore, need not address whether Practice Book § 42-41 is to be interpreted as requiring that a motion for a judgment of acquittal be granted or denied as to the entire count containing the statutory alternative for which there is insufficient evidence because we decline to review the claim.

913 A.2d 436 ("[w]e decline to review this claim under *Golding* because the defendant's right to an information in two parts is based on [the rules of practice], and as such, is not a constitutional right"), cert. denied, 281 Conn. 922, 918 A.2d 273 (2007); *State* v. *Sewell*, 95 Conn. App. 815, 822, 898 A.2d 828 ("the defendant's procedural right to disclosure of inculpatory materials under our rules of practice does not give rise in and of itself to a constitutional right"), cert. denied, 280 Conn. 905, 907 A.2d 94 (2006). The defendant has not demonstrated that the procedural right upon which she bases her claim, arising out of Practice Book § 42-41, is constitutional in nature and, thus, that the claim on appeal is of constitutional magnitude. We conclude that the defendant has failed to satisfy the second prong of *Golding*. The defendant's claim, therefore, is not reviewable.

The judgment is affirmed.

In this opinion the other judges concurred.